**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**JEROD MONTREL ASKEW,**

**Petitioner.**

**v.** **CIVIL NO. 2:25-cv-642**
**[ORIGINAL CRIMINAL NO. 2:21-cr-8]**

**UNITED STATES OF AMERICA,**

**Respondent.**

**OPINION AND FINAL ORDER**

This matter comes before the court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion"), filed pro se on October 1, 2025.[1] ECF No. 170. Petitioner challenges his conviction and sentence in this matter on five (5) grounds, all premised on alleged ineffective assistance of his counsel before and during the three (3) day jury trial in this criminal case. See id. Petitioner also requests that the court schedule an evidentiary hearing pursuant to 28 U.S.C. § 2255(b) and appoint Petitioner counsel for assistance in this matter,

[1] The court considers Petitioner's Motion, ECF No. 170, as effectively filed on the date he certifies that he placed it in his institutional mailing system. See Johnson v. United States, No. 4:13-cv-111, 2013 WL 12097823, at *1 n.1 (E.D. Va. Sept. 9, 2013) (Smith, C.J.) (citing Houston v. Lack, 487 U.S. 266 (1988) (articulating the "prison mailbox rule")); Rule 3(d), Rules Governing Section 2255 Proceedings. Petitioner certifies that he placed his Motion in the prison mailing system on October 1, 2025. ECF No. 170 at 12.

whether the court schedules an evidentiary hearing or not. ECF No. 170-1 at 14 (Memorandum in Support of Motion).

## I. PROCEDURAL HISTORY

### A. Conviction and Sentence

On March 4, 2021, a federal grand jury returned a six (6) count indictment. ECF No. 26. On April 22, 2021, the grand jury returned a ten (10) count Superseding Indictment charging Petitioner with various drug offenses. ECF No. 34.[2] Count One charged Petitioner with Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. § 846. Id. at 1-3. Counts Two and Three charged Petitioner with Distribution of Heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Id. at 4. Count Four charged Petitioner with Possession with Intent to Distribute Heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. Id. at 4-5. Counts Five and Ten charged Petitioner with Possession of a Firearm during a Drug Trafficking Crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Id. at 5, 7. Count Six charged Petitioner with Possession

[2] The United States filed a Motion to Amend the Superseding Indictment on April 26, 2021, seeking to amend two typographical errors under Counts Five and Ten. ECF No. 37. Magistrate Judge Douglas E. Miller granted the Motion to Amend during the Arraignment and Initial Appearance held the following day. See ECF No. 39 (Minutes). The Amended Superseding Indictment appears on the docket at ECF No. 34, and the original version with the typographical errors may be found at ECF No. 34-2. In referencing the "Superseding Indictment," this Opinion and Final Order refers to the amended version at ECF No. 34.

with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Id. at 5. Count Seven charged Petitioner with Possession with Intent to Distribute Crack Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Id. at 6. Finally, Counts Eight and Nine charged Petitioner with Intent to Distribute Marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2. Id. at 6-7.

An Arraignment was held before Magistrate Judge Douglas E. Miller on April 28, 2021. ECF No. 41 (Arraignment Minutes). At the Arraignment, Petitioner appeared with counsel, entered a plea of not guilty on all Counts, and demanded a jury trial. Id. Soon thereafter, Petitioner filed a "Motion for a Reasonable Continuance of the June 15, 2021 Trial Date." ECF No. 47. That Motion was accompanied by a signed statement by Petitioner waiving his speedy trial rights. ECF No. 48-1. The United States informed the court that it did not oppose the continuance, see ECF No. 49, and at a Motion Hearing held on June 2, 2021, Magistrate Judge Miller continued Petitioner's trial until November 30, 2021, ECF No. 50 (Motion Hearing Minutes).

After further proceedings, the court convened for trial on September 14, 2022. ECF No. 84 (Minutes). Complications arose because a witness, the confidential informant from the controlled drug purchases, failed to appear, and the court excused the jury panel until September 16, 2022. Id. At a Status Conference held on

September 15, 2022, the court dismissed Counts Two and Three on the motion of the United States. See ECF No. 85 (Status Conference Minutes). The court reconvened for trial on September 16, 2022, and impaneled a jury. Opening statements were delivered on September 19, 2022, and after a three (3) day trial the jury delivered a guilty verdict on Counts One, Four, Five, Six, Seven, Eight, Nine, and Ten. ECF No. 100 (Jury Verdict). Petitioner moved for a judgment of acquittal, ECF Nos. 105 (Motion), 108 (Memorandum in Support), and for a new trial, ECF Nos. 106 (Motion), 107 (Memorandum in Support). The court denied these motions on December 16, 2022. ECF No. 118.

On March 17, 2023, the court sentenced Defendant to a total term of imprisonment of one hundred ninety-eight (198) months. ECF No. 130 at 3 (Judgment). That term consisted of seventy-eight (78) months on Count One; seventy-eight (78) months on Count Four, to be served concurrently; sixty (60) months on Count Five, to be served consecutively; seventy-eight (78) months on Count Six, to be served concurrently; seventy-eight (78) months on Count Seven, to be served concurrently; sixty (60) months on Count Eight, to be served concurrently; sixty (60) months on Count Nine, to be served concurrently; and sixty (60) months on Count Ten, to be served consecutively. Id. The court also imposed a five (5) year term of supervised release on each Count, each to be served concurrently upon Petitioner's release from incarceration. Id. at 4. Finally,

the court imposed an eight hundred dollar ($800) special assessment. Id. at 7.

Petitioner filed a timely Notice of Appeal. ECF No. 135. On April 10, 2024, the United States Court of Appeals for the Fourth Circuit issued a published Opinion affirming the court's Judgment. ECF No. 151; see United States v. Askew, 98 F.4th 116 (4th Cir. 2024). Petitioner sought rehearing and rehearing en banc, which the Fourth Circuit denied. See ECF No. 155. Petitioner then filed a Petition for Writ of Certiorari, see ECF No. 162, which the Supreme Court denied on October 7, 2024, ECF No. 163.

Before he filed his Petition for Writ of Certiorari, Petitioner, through the Federal Public Defender, moved for a sentence reduction on Counts One, Four, Six, and Seven pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Commission Guidelines Manual. ECF No. 158. The Federal Public Defender also informed the court that it had conferred with the United States and that the United States did not oppose the sentence reduction. Id. at 2. Accordingly, on June 20, 2024, the court reduced Petitioner's sentence on Counts One, Four, Six, and Seven from seventy-eight (78) months to seventy (70) months. ECF No. 159 (Order).

**B. Motion to Vacate, Set Aside, or Correct Sentence**

On October 6, 2025, before one year had run from the date the Supreme Court denied his Petition for Writ of Certiorari,

Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence. ECF No. 170. Petitioner challenges his conviction and sentence in this matter on five (5) grounds, all premised on the allegedly ineffective assistance of his trial counsel, Andrew Sacks ("Trial Counsel"), before and during trial. See id.; Strickland v. Washington, 466 U.S. 668 (1984). Petitioner also requests that the court schedule an evidentiary hearing pursuant to 28 U.S.C. § 2255(b) and appoint Petitioner counsel for assistance in this matter, whether the court schedules an evidentiary hearing or not. ECF No. 170-1 at 14 (Memorandum in Support of Motion).

On November 4, 2025, the court deemed Petitioner's Motion timely under 28 U.S.C. § 2255(f)(1), directed the United States to file a response to the Motion, and accorded Petitioner an opportunity to file a reply brief. ECF No. 171 at 2 (Order). As to Petitioner's request for an evidentiary hearing, the court reserved the question of an evidentiary hearing until after briefing had been completed by Petitioner and the United States. Id. at 2-3. Finally, the court held that Petitioner had not shown "exceptional circumstances" justifying the immediate appointment of counsel. Id. at 3-4. Accordingly, the court held in abeyance the need for court-appointed counsel or an evidentiary hearing. Id. at 4; see Rule 8(c), Rules Governing Section 2255 Proceedings

(requiring appointment of counsel if an evidentiary hearing is held).

On December 10, 2025, the United States filed a Motion to Compel Disclosure of Information from Former Defense Counsel. ECF No. 172 ("Motion to Compel"). The United States requested that the court enter an order finding that, by filing his Motion premised on the alleged ineffective assistance of counsel, Petitioner "waived the attorney-client privilege and any other right to confidentiality under Va. R. Prof. Resp. 1.6 with respect to the issues raised in the [P]etition." Id. at 6. Further, the United States asked the court to order that Petitioner's Trial Counsel, Andrew Sacks, "provide to the government copies of all correspondence or other material relating to" Petitioner's Strickland claims, and that Mr. Sacks furnish the United States with "affidavits that contain a complete discussion of all information and advice imparted to and received from [Petitioner]" regarding issues raised by Petitioner's Strickland claims. Id. Finally, the United States requested that the court authorize Mr. Sacks to participate in interviews with the United States, to the extent Petitioner had waived his attorney-client privilege and right to confidentiality. Id. at 7.

On January 7, 2026, having received no opposition by Petitioner, the court granted the United States' Motion to Compel for good cause shown. ECF No. 175 (Order); see Courtade v. United

States, 243 F. Supp. 3d 699, 702 (E.D. Va. 2017) (Smith, C.J.) ("[A] petitioner who claims ineffective assistance of counsel in a habeas petition waives the protection of attorney-client privilege over information that is relevant to those claims."); Strickland, 466 U.S. at 691 ("[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions."). Unbeknownst to the court, Petitioner did not receive a copy of the United States' Motion to Compel until that same day, January 7, 2026. ECF No. 176 at 4 (Sworn Declaration of Jerod Montrel Askew). Thus, on January 9, 2026, Petitioner filed a Partial Objection to Government's Motion to Compel Disclosure from Former Defense Counsel. Id. at 1-3 ("Partial Objection").[3] Because of the apparent delay in Petitioner's receipt of the Motion to Compel, the court addresses his Partial Objection in this Opinion and Final Order.[4]

On April 6, 2026, the United States filed a Response in Opposition to Petitioner's Motion Under 28 U.S.C. § 2255. ECF No. 177 ("Response"). The Response is accompanied by (1) the

---

[3] The court considers Petitioner's Partial Objection, ECF No. 176, as effectively filed on the date he certifies that he placed it in his institutional mailing system. See supra note 1.

[4] See infra Part III.

Affidavit of Trial Counsel Andrew M. Sacks, Esquire, ECF No. 177-1 ("Sacks Affidavit"); a Search Warrant for 3800 Halyard Court Apartment 103 issued by the Virginia Beach Circuit Court on March 24, 2020, with related court documents, ECF No. 177-2; (3) a Search Warrant for Real-Time Location Data issued by the Chesapeake Circuit Court on March 23, 2020, with related court documents, ECF No. 177-3; (4) a Search Warrant for the contents of two (2) iPhones issued by the Chesapeake Circuit Court on March 25, 2020, with related court documents, ECF No. 177-4; and (5) a Warrant by Telephone or Other Reliable Electronic Means for the contents of a seized Samsung Galaxy cell phone issued by the United States District Court for the Eastern District of Virginia on September 24, 2020, with related court documents, ECF No. 177-5.

On review of the Motion, the United States' Response, the affidavits and materials submitted by the United States and Petitioner's Trial Counsel, and the transcripts and records of this proceeding and Petitioner's trial, the court deems an evidentiary hearing and appointment of counsel unnecessary. See Rule 8(a), Rules Governing Section 2255 Proceedings; United States v. Mayhew, 995 F.3d 171, 177 (4th Cir. 2021); Williams v. United States, No. 2:16-cv-378, 2016 WL 10952820, at *2 (E.D. Va. Oct. 20, 2016) (Doumar, J.). The court accordingly deems Petitioner's Motion ripe for resolution, and Petitioner's requests for an evidentiary hearing and appointment of counsel are **DENIED**.

## II. EVIDENCE AT TRIAL

In February 2020, Detective Aaron Gosnell of the Chesapeake Police Department Vice and Narcotics Unit began investigating Petitioner for suspected narcotics distribution. ECF No. 146 at 47-49 (Trial Transcript). On March 18, 2020, Detective Gosnell watched Petitioner leave the residence of the mother of his children, 3800 Halyard Court, Apartment 103, Virginia Beach, Virginia,[5] and travel to the City of Chesapeake, Virginia. Id. at 50-51, 63. There, Petitioner briefly visited the residence of a known narcotics distributor. Id. at 51. Two days later, on March 21, 2020, Detective Gosnell surveilled Petitioner as he left 3800 Halyard Court and travelled to Chesapeake, this time visiting another known narcotics distributor. Id. at 55-56. Then, on March 23, 2020, Detective Gosnell observed Petitioner as he left 3800 Halyard Court, placed a white bag in a blue Honda Accord, and then drove to the Norfolk International Airport. Id. at 57-58. Detective Gosnell and other law enforcement did not follow Petitioner into the airport garage, but through electronic surveillance, Detective Gosnell tracked Petitioner as he travelled to the vicinity of Baltimore, Maryland, and then back to the

[5] Evidence recovered from the premises indicated that Petitioner was using this residence as his mailing address. See ECF No. 146 at 330, 355. In his cell phone communications, Petitioner also referenced this apartment when asked for his address. ECF No. 147 at 129.

Norfolk Airport over the course of roughly eight and one half (8.5) hours. Id. at 58-61. Officers observed Petitioner back at the airport carrying the same white bag, but it appeared smaller. Id. at 62.

On March 24, 2020, Detective Gosnell and Officer Jonathan Mills with the Chesapeake Police Department performed a traffic stop of Petitioner's vehicle, this time a black Jeep Cherokee, as he was driving in Chesapeake with his two small children and their mother. Id. at 19-22, 54-70. At that point, K-9 Detective Clinton J. Rombs performed an "open air sniff" around Petitioner's vehicle with a K-9 dog. Id. at 33-34. That "sniff" resulted in an immediate positive result for the presence of illegal narcotics. Id. at 36-37. K-9 Detective Rombs then performed a search of the vehicle's center console, which yielded an empty plastic baggie, two (2) cell phones, and a loaded Glock pistol. Id. at 37-39, 64-67. While detained, Petitioner informed Detective Rombs that the baggie had "probably" contained marijuana previously. Id. at 41, 68. Petitioner also "spontaneously uttered" that he had forgotten about the Glock pistol. Id. at 68. During this time, Detective Gosnell administered a Miranda warning and Petitioner invoked his right to an attorney. Id. at 68-69, 74.

At roughly the same time, Virginia Beach SWAT executed a Search Warrant at 3800 Halyard Court, Apartment 103, "which was preplanned to occur after the traffic stop." Id. at 69-70; see ECF

No. 177-2 at 3 (Executed Search Warrant). There, Detective Joe Otranto with the Virginia Beach Police Department ("VBPD") worked to photograph and collect evidence. ECF No. 146 at 105, 107. Detective Otranto documented a suitcase containing heroin, powder and crack cocaine, marijuana, and drug measuring and packaging materials. Id. at 110-21.[6] He also documented bank cards, cell phones, eleven thousand five hundred sixty-seven dollars ($11,567) in cash, six (6) firearms with magazines and ammunition, and other items. Id. at 122-27, 130-38. Finally, Detective Otranto documented and recovered a storage unit agreement in Petitioner's name associated with a unit at AAAA Self Storage in Virginia Beach, Virginia. Id. at 73, 128-30, 145, 159.

After VBPD discovered drugs and weapons at Petitioner's residence, Detective Gosnell arrested Petitioner. Id. at 72. Detective Gosnell and other law enforcement then obtained a search warrant for Petitioner's unit at AAAA Storage, where they then transported Petitioner. Id. During the ensuing search of Petitioner's storage unit, VBPD Detective Edward Filio documented the discovery and collection of almost 1.6 kilograms of marijuana,

[6] A lab later confirmed that the suitcase contained two hundred forty-eight (248) grams of heroin, four hundred forty-three (443) grams of marijuana, and forty-five (45) grams of powder found to contain cocaine or cocaine base. ECF No. 146 at 140-42. Petitioner stipulated that the forensic scientists "utilized proper scientific methods to analyze the narcotics exhibits in this case and properly recorded the results of their analysis." ECF No. 89 at 1 (Stipulation #1).

plastic bags containing cocaine residue, and drug packing and processing materials, such as sifters, a hydraulic press, and ammonia. ECF No. 147 at 7-24; see id. at 132-35. Detective Filio also documented the discovery of a loaded Cobray pistol and marijuana inside a safe, as well as a box for a Glock pistol matching the pistol recovered from Petitioner's Jeep. Id. at 24-28, 132.

After the searches of 3800 Halyard Court, Apartment 103, and Petitioner's unit at AAAA Storage, Virginia State Police "properly and accurately downloaded data from" the two cell phones seized during the traffic stop. ECF No. 96 (Stipulation #7); see ECF No. 177-4 at 1-4 (Search Warrant). Virginia State Police provided the data extractions to Detective Gosnell, who then provided them to Bureau of Alcohol, Tobacco, and Firearms Special Agent Edward Winkelspecht. ECF No. 146 at 70-71. Special Agent Winkelspecht reviewed Petitioner's phone extractions, which revealed an "owe sheet" tracking amounts owed to Petitioner for narcotics transactions, ECF No. 147 at 130-32, as well as extensive conversations with various persons, including persons named on the "owe sheet," concerning wholesale transactions in cocaine, heroin, and marijuana, see, e.g., id. at 82-92, 97-101, 106-08, 110-14, 116-26. Special Agent Winkelspecht also found communications about firearms, including exchanges where Petitioner sought to trade narcotics for one or more pistols. Id. at 92-97, 102-04. One such

exchange included a picture of a pistol matching a Springfield XD pistol recovered at 3800 Halyard Court, Apartment 103. Id. at 102-06. Communications concerning drug transactions also implicated Petitioner's storage unit at AAAA Storage and 3800 Halyard Court, Apartment 103. Id. at 114-15.

The United States called Chesapeake Police Department Detective Joseph Milewczick as an expert on drug distribution and the relationship between guns and the drug trade. Detective Milewczik testified that guns are "considered pretty much a tool of the trade. It's used not only to protect yourself from robbery but also to protect the assets." Id. at 157. Detective Milewczik also testified that the narcotics recovered at 3800 Halyard Court Apartment 103 and Petitioner's unit at AAAA storage were of a sufficient quantity to indicate an intent to distribute and had a street value of tens of thousands of dollars. Id. at 158-62.

**III. PROTECTIVE ORDER**

In his Partial Objection, Petitioner accedes to his Trial Counsel's provision of affidavits and supporting documents, provided they are filed under seal and the court issues a protective order limiting their use to this proceeding. ECF No. 176. Petitioner objects, however, to his Trial Counsel participating in interviews with the United States as "overbroad, unnecessary, and without support in the law." Id. at 2.

The court has reviewed the Sacks Affidavit in its entirety, ECF No. 177-1, and finds no information therein that remains protected by privilege or Petitioner's right to confidentiality. See Courtade, 243 F. Supp. 3d at 702; Perwaiz v. United States, No. 2:19-cr-189, 2026 WL 299993, at *3-4 (E.D. Va. Feb. 4, 2026) (Smith, J.). The court accordingly finds no basis to seal the Sacks Affidavit. See E.D. Va. Crim. R. 49. Moreover, the court disagrees that the United States should be barred from interviewing Trial Counsel, as any order to that effect "would significantly impair the ability of the government to prepare its case." Courtade, 243 F. Supp. 3d at 706.[7]

The court finds good cause, however, for issuance of a protective order "consistent with the interests of the habeas petitioner in obtaining a fair adjudication of his petition and securing a retrial untainted by constitutional errors." Id. at 705 (quoting United States v. Nicholson, 611 F.3d 191, 217 (4th Cir. 2010)). Accordingly, it is **ORDERED** that that the attorney-client privilege shall not be deemed automatically waived in any other federal or state proceeding outside of this § 2255 proceeding. As such, the United States is prohibited from using disclosures by

---

[7] Moreover, if an evidentiary hearing was required on the Motion, Petitioner's counsel would need to testify under oath in court.

Petitioner's Trial Counsel without further order of a court of competent jurisdiction or a written waiver by Petitioner.

**IV. STANDARDS**

A prisoner may challenge a sentence imposed by a federal court if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If the court is satisfied that one of these grounds exists, the court may vacate, set aside, or correct the sentence. Id. § 2255(b). Although a petitioner bears the burden of proving one of these grounds by a preponderance of the evidence, see Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam), district courts are instructed to construe pro se petitions liberally, Lawe v. United States, 905 F. Supp. 2d 744, 746 (E.D. Va. 2012) (Smith, J.) (citing Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985)). However, if the motion, when viewed against the record, shows the petitioner is not entitled to relief, the court should deny the motion. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

The Sixth Amendment provides a right to effective assistance of counsel for criminal defendants. U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on an ineffective assistance of counsel claim, a petitioner must show

that (1) the counsel's representation was deficient, meaning counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) such deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. A petitioner must "satisfy both prongs, and a failure of proof on either prong ends the matter." United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004). "Unsubstantiated and largely conclusory statements are insufficient to carry a petitioner's burden as to the two prongs of this test." Beyle v. United States, 269 F. Supp. 3d 716, 726 (E.D. Va. 2017) (Smith, J.) (citation modified).

A petitioner satisfies the deficient performance prong by showing that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 688. However, "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. And because there are

"countless ways to provide effective assistance in any given case," strategic decisions at trial are "virtually unchallengeable." Id. at 689-90.

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In doing so, a petitioner "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). Furthermore, it is "not enough" that counsel's errors created a disadvantage; rather, the error "must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

## V. ANALYSIS

### A. Ground One

Petitioner first claims that his counsel was ineffective at trial for failing to object when Detective Aaron Gosnell testified on direct examination by the United States that Petitioner invoked his Miranda rights during the traffic stop. ECF Nos. 170 at 4, 170-1 at 3-7. The testimony at issue was as follows:

Q. Did you have an opportunity to Mirandize Mr. Askew?

A. Yes, I did Mirandize him from a preprinted evidence card -- preprinted Miranda card, I'm sorry.

Q. Okay. And then he indicated he understood --

A. Yes.

Q. -- his rights and was willing to answer some of your questions?

A. Yes, sir.

Q. Okay. Could you proceed on to what the conversation you had then with Mr. Askew.

A. After being read his Miranda rights, I explained to Mr. Askew why he was being stopped and that he was the subject of an ongoing narcotics investigation. While speaking to him about that and advising him of that, Mr. Askew appeared shocked.

MR. SACKS: Objection, Your Honor. That is an opinion. He can describe physically.

BY MR. MUHR:
Q. Just describe for yourself physically.

A. While advising him of that, Mr. Askew advised me that we must have the wrong person, to which I continued to explain to him that we had electronically surveilled him go up to Baltimore the night before.

Q. And then what was his physical reaction to that? Describe what it was.

A. At that point his eyes got big, he broke eye contact and looked away from me and immediately asked for his lawyer.

THE COURT: Immediately what?

THE WITNESS: Asked for his lawyer, Your Honor. I apologize.

ECF No. 146 at 68-69 (Transcript of Trial).

Petitioner claims that by failing to object to the above testimony, his Trial Counsel committed a "grave and egregious error" that "could have reasonably 'planted in the mind of the jury the dark suspicion that the defendant had something to hide.'" ECF No. 170-1 at 5 (quoting Alston v. Garrison, 720 F.2d 812, 816 (4th Cir. 1983)). Petitioner further argues that Trial Counsel "doubled down" on the alleged error by raising Petitioner's invocation of his right to counsel on cross-examination of Detective Gosnell:

> Q. Now, the government, prosecution asked you did you Mirandize him. I think maybe we all know that. But Miranda, those are certain warnings or -- I guess warnings that you give somebody when they are in custody or perhaps detained to let them know what their constitutional rights are as far as speaking with the police?
>
> A. Yes, sir.
>
> Q. And that's a standard warning that's given to everybody in that situation?
>
> A. Yes, sir.
>
> Q. And part of it is you tell the citizen, you have the right to remain silent, correct?
>
> A. Yes, sir.
>
> Q. You have the right to an attorney, if you so choose, correct?
>
> A. Yes, sir.
>
> Q. You can't afford one, the Court can get one for you appointed, something like that?

A. Yes, sir.

Q. So those are the rights we have as citizens, are they not?

A. As part of the Miranda warning, yes, sir.

Q. And Mr. Askew, after he said you must have the wrong person, when you questioned him further, he said he would like to talk to an attorney, correct?

A. Yes, sir.

Q. That's exactly what you told him he had the right to do?

A. It is.

ECF No. 146 at 85-86.

Petitioner argues that by eliciting this testimony, and by later referencing Petitioner's "polite" and "respectful" behavior during the traffic stop in closing arguments, his Trial Counsel "opened the door" to the United States stating on rebuttal that "as soon as Detective Gosnell started telling him, you know, we pinged and followed you all the way up to Baltimore, that is when he got nervous, that's when he asked for an attorney." See ECF Nos. 170-1 at 5, 148 at 85, 109.[8] Petitioner claims that this testimony "likely hit home with the jury, and severely undercut Petitioner's defense of the case." ECF No. 170-1 at 6.

[8] Petitioner's Trial Counsel moved for a mistrial after the United States' closing argument, claiming a violation of Doyle v. Ohio, 426 U.S. 610 (1976). ECF No. 148 at 109-12. The court denied the motion, in part because the United States' argument did not differ from testimony unobjected to at trial. Id. at 114.

Specifically, Petitioner speculates that the testimony helped the jury infer that he possessed firearms in furtherance of his drug trafficking, and not legally, for the purposes of Counts Five and Ten. Id. at 6-7; see 18 U.S.C. § 924(c)(1)(A)(i).

i. Deficient Performance

"[T]he Due Process Clause guarantees that defendants who invoke their constitutional rights to silence and counsel will not have that invocation used against them at trial." Askew, 98 F.4th at 126 (citing Doyle, 426 U.S. at 619). "This does not mean, however, that every fleeting reference to those invocations constitutes a per se due process violation." Id. Rather, a Doyle violation arises where the United States attempts to "exploit the defendant's invocation of his right by using it as evidence of his guilt or unreliability at trial." Id. (emphasis in original) (citing Noland v. French, 134 F.3d 208, 216 (4th Cir. 1998)). "So long as the allusion to the invocation was 'not designed to draw meaning from silence,' the defendant's rights have not been violated." Id. (quoting Anderson v. Charles, 447 U.S. 404, 409 (1980)).

On direct examination of Detective Gosnell, the United States did not elicit testimony concerning Petitioner's Miranda invocation. The Prosecutor at first questioned Detective Gosnell about his conversation with Petitioner after the Miranda warning. ECF No. 146 at 68-69. Trial Counsel objected to Detective Gosnell's

testimony that Petitioner "appeared shocked," so the Prosecutor instead questioned about Petitioner's "physical reaction" after Detective Gosnell informed him he was the subject of a narcotics investigation. Id. at 69 (emphasis added). After Detective Gosnell testified that Petitioner invoked his right to counsel, the Prosecutor did not "attempt to draw meaning from silence." Askew, 98 F.4th at 126 (quoting Anderson, 447 U.S. at 409). In fact, the Prosecutor immediately changed the subject. ECF No. 146 at 69. Thus, Detective Gosnell's testimony about Petitioner's invocation arose in the context of his "narrative[] regarding [Petitioner's] apprehension and arrest." Noland, 134 F.3d at 216; accord United States v. Espinosa, 679 F. App'x 267, 269 (4th Cir. 2017).

In the Sacks Affidavit, Trial Counsel states that he elected not to object to Detective Gosnell's testimony on direct examination because of "strategic and tactical considerations at the time." ECF No. 177-1 ¶ 16 (citing ECF No. 107 at 2 (Brief in Support of Motion for a New Trial)). Trial Counsel was concerned, in the moment, that "an express objection in open Court might create an impression with the jury that the testimony had harmed the defendant's case." Id. ¶ 17. Trial Counsel quickly assessed that any prejudice posed by Detective Gosnell's testimony was "too remote" to outweigh the risk of creating such an adverse impression with the jury. Id. ¶¶ 18-19. Instead, Trial Counsel evidently elected on cross-examination to mitigate any negative impression

with the jury by emphasizing Petitioner's constitutional right to request the presence of an attorney. See ECF No. 146 at 85-86; see also Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).

Because Detective Gosnell's testimony about Petitioner's invocation was "fleeting," and because the United States did not attempt thereafter to "draw meaning from silence," the court deems Trial Counsel's strategic decision not to object reasonable under "prevailing professional norms." Strickland, 466 U.S. at 688; see Moore v. United States, 934 F. Supp. 724, 727 (E.D. Va. 1996) (Ellis, J.) ("Many objections, while not lacking in technical merit, are either not worth making or may reasonably be viewed as likely to cause more harm if made than if foregone."); see also United States v. Mason, 774 F.3d 824, 833 (4th Cir. 2014) ("[W]e do not fault Mason's attorneys for declining to pursue a non-existent Doyle violation in this case."). As to Trial Counsel's choice to question Detective Gosnell about Petitioner's Miranda invocation during cross-examination, the court notes that "whether and how to cross-examine a witness" is a strategic decision within "the exclusive province of the attorney, after consultation with the client." Hansford v. Angelone, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002) (Lee, J.); accord Ellis v. Dotson, No. 1:25-cv-866, 2026 WL 868873, at *6 (E.D. Va. Mar. 30, 2026) (Giles, J.) (citing Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978)). Trial Counsel's cross-examination of Detective Gosnell about

Petitioner's Miranda invocation plausibly mitigated any negative impression with the jury arising from testimony about the same on direct examination. That this choice to cross-examine Detective Gosnell may have "opened the door" to the United States' later reference to Petitioner's invocation, ECF No. 170-1 at 5, does not overcome the strong presumption that Trial Counsel "made all significant decisions in the exercise of reasonable professional judgment," Strickland, 466 U.S. at 690. The court declines to "second-guess" Trial Counsel's strategic decision. Id.; see United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011) ("We generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." (citation modified)).

Finally, Trial Counsel's performance was not deficient because he raised Petitioner's "polite," "cooperative," and "respectful" behavior during closing arguments. See ECF No. 148 at 63. That Trial Counsel's argument potentially invited the United States to reference Petitioner's nervousness and Miranda invocation does not overcome the strong presumption that Trial Counsel exercised reasonable judgment. In any event, Trial Counsel promptly sought a mistrial, outside the presence of the jury, after the United States referenced Petitioner's invocation in closing. Id. at 109-12. Trial Counsel also sought a new trial pursuant to Federal Rule of Criminal Procedure 33 on this basis. See ECF

Nos. 106, 107. This underscores that Petitioner enjoyed the advice and assistance of competent counsel at trial.

ii. Prejudice

Even if Trial Counsel's performance was deficient, the references to Petitioner's Miranda invocation did not prejudice his defense. Petitioner raised the United States' closing remarks about his invocation on direct appeal, and the Fourth Circuit held that "the prosecution's brief remark here did not amount to impermissible exploitation." Askew, 98 F.4th at 126. Moreover, mention of Petitioner's Miranda invocation "in no event warrant[ed] a new trial," as "[t]he contested remark was one-off and cursory" amidst Petitioner's four hundred twenty-five (425) page trial transcript. Id. at 127.

On collateral attack, even taking into account all three (3) references to Petitioner's Miranda invocation challenged by Petitioner's Motion, the court notes first that neither the United States nor Trial Counsel elicited testimony referencing Petitioner's invocation in such a way as to give rise to an inference of guilt. Rather, as the Fourth Circuit has already described, references to Petitioner's invocation by Detective Gosnell and the Prosecution were fleeting and used only to construct the narrative of Petitioner's arrest. Compare id. ("[T]he prosecution did not linger on the point or encourage the jury to draw an inference of guilt from the invocation, instead

segueing directly into its next line of argument."), and Noland, 134 F.3d at 216 ("Because trial testimony only made passing reference to Miranda, and the prosecutor did not specifically exploit Noland's exercise of his Miranda rights, we find no . . . error."), with Alston, 720 F.2d at 816-18 (finding Doyle violation where a witness thrice testified of the prisoner's post-invocation silence). Trial Counsel's questioning of Detective Gosnell, meanwhile, worked to emphasize that Petitioner exercised a constitutional right to request an attorney. ECF No. 146 at 85-86. In short, no testimony at trial "use[d] the fact of the [Petitioner]'s silence against him." Espinoza, 679 F. App'x at 269.

Next, the court notes the overwhelming evidence supporting Petitioner's conviction on each Count, including the firearm convictions on Counts Five and Ten. See Askew, 98 F.4th at 123 ("Time and time again, the jury saw that in Askew's drug trafficking business, guns and drugs went hand in hand."). This evidence was far from merely circumstantial, as Petitioner urges. See ECF No. 170-1 at 6-7. Rather, as summarized at the outset of this Opinion and Final Order, "the jury was presented with evidence of a substantial quantity of drugs, drug paraphernalia, cash, and firearms scattered throughout [Petitioner]'s apartment and storage unit." Askew, 98 F.4th at 123. The jury was also presented with the extensive communications in Petitioner's cell phones regarding

transactions in firearms and narcotics. "The evidence in its totality painted a picture of a sophisticated drug trafficking enterprise of which every component was a vital tool." Id.

That the fleeting references to Petitioner's Miranda invocation was what led the jury to conclude he unlawfully possessed firearms is improbable, if not simply the kind of unsubstantiated and conclusory argument that this court discredits on collateral attack. See Beyle, 269 F. Supp. 3d at 726. Petitioner must show that the alleged error of his Trial Counsel "worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher, 126 F.3d at 572 (quoting Murray, 477 U.S. at 494). Given the evidence summarized at the outset of this Opinion and Final Order,[9] the court cannot conclude that the alleged error of Trial Counsel was "so serious as to deprive the defendant of a fair trial." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 687); cf. Alston, 720 F.2d at 817 (finding Doyle violation was not harmless because of "nagging gaps in the proof").

Finally, the court notes that Petitioner, through Trial Counsel, moved for a mistrial on the basis of Doyle, ECF No. 148 at 109-12, and for a new trial, ECF No. 106. These motions were denied, as the court found there had been no Doyle violation, or

[9] See supra Section I.A.

in the alternative, no prejudice resulting from the alleged violation. ECF Nos. 148 at 112-14 (Trial Transcript), 118 at 9-17 (Memorandum Order). The court also noted that its jury instructions clarified that "[n]o inference of any kind may be drawn from the fact that a defendant decided to exercise his or her privilege under the Constitution and did not testify." ECF Nos. 148 at 132, 118 at 15 (citing ECF No. 99).

In summary, the court concludes that the isolated references to Petitioner's Miranda invocation did not prejudice his defense.

**B. Ground Two**

Pursuant to Counts Five and Ten, the jury found Petitioner guilty of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). ECF No. 100 at 3 (Jury Verdict); see ECF No. 34 at 5, 7 (Superseding Indictment). The court instructed the jury at trial that "the government must prove that the possession of a firearm furthered, advanced, or helped forward the drug trafficking crime." ECF No. 148 at 158 (Transcript of Trial). Moreover, in making an in-furtherance-of determination, the court instructed that the jury could consider the following:

> The type of drug activity that was being conducted, the accessibility of the firearm, the type of firearm, whether the firearm was stolen, the status of the possession, whether it was legitimate or illegal, whether the firearm was loaded, the proximity of the firearm to either drugs or drug profits, the time and circumstances under which the firearm was found, whether

> the firearm provided a defense against the theft of drugs and/or reduced the probability that such theft might be attempted. The possession is in furtherance if the purpose of the firearm is to protect or embolden the defendant. Distribution of drugs and the common sense recognition that drug dealing is a dangerous and violent enterprise may support an inference that the defendant's possession of a firearm was to facilitate drug dealing.

Id. at 148-49.

Petitioner argues that Trial Counsel rendered ineffective assistance for failing to object to these jury instructions. See ECF Nos. 170 at 5-6, 170-1 at 7-10. Petitioner claims that this instruction "essentially compelled the jury to find, as a matter of law, that all drug dealing is dangerous and violent." ECF No. 170-1 at 8. "That finding permitted the jury to make an inference - erroneously, in this case, - that Petitioner possessed firearms to facilitate drug dealing." Id. Thus, Petitioner also argues that Trial Counsel erred by "failing to request an instruction that the 'mere presence' of a firearm is not sufficient to sustain a guilty finding under § 924(c)." Id.

Petitioner also challenged the court's jury instructions on direct appeal, arguing that the court "compelled the jury to find that 'a gun found in the presence of drugs will necessarily be connected to the violence inherent in drug dealing' and thus conclude that 'the mere presence of firearms in the general vicinity of controlled substances' satisfied the in-furtherance-of element." Askew, 98 F.4th at 121. The Fourth Circuit rejected this

argument, identified "no false legal premise" in the court's instructions, and held that the court properly supplied the jury "with a range of factors to consider" in determining if Petitioner possessed a firearm in furtherance of drug trafficking. Id. Furthermore, the Fourth Circuit held that a "'mere presence' instruction was unnecessary," as the "jury was already well-informed that the government needed to prove something more than bare proximity to drugs in order to demonstrate that the firearms were used in furtherance of trafficking." Id. at 122.

Trial Counsel states that he did not object to the court's jury instructions, and specifically the court's instruction concerning "the common sense recognition that drug dealing is a dangerous and violent enterprise," because he deemed the instruction "a correct statement of the law" that "was otherwise a proper legal principle in the instruction." ECF No. 177-1 ¶ 22. Furthermore, Trial Counsel did not request an additional "mere presence" instruction because it would have been redundant amidst the court's other instructions. Id. ¶¶ 26-30. Trial Counsel's statements are consistent with the Fourth Circuit's express holding that the court's jury instructions were proper. See Askew, 98 F.4th at 121-23. Trial Counsel's failure to object to proper jury instructions or to offer alternative instructions cannot sustain an ineffective assistance of counsel claim. See Pruett v. Thompson, 996 F.2d 1560, 1577 (4th Cir. 1993) ("[I]t is not

ineffective assistance of counsel to fail to offer additional or different instructions if the ones given by the trial court are proper."); Oken v. Corcoran, 220 F.3d 259, 270 (4th Cir. 2000) (holding that counsel was not ineffective for failing to raise a "futile" objection).

In any event, it is unclear how Petitioner could suffer prejudice here from the foregone objection or "mere presence" instruction. As already memorialized at length by this Opinion and Final Order, the evidence overwhelmingly indicates that firearms were an essential component of Petitioner's drug trafficking enterprise. See, e.g., Askew, 98 F.4th at 119 (describing how police recovered six (6) firearms at 3800 Halyard Court, Apartment 103, which "appeared to be the nerve center for a drug trafficking enterprise"); ECF No. 147 at 25-26 (describing how police found a firearm stored with marijuana in a safe at Petitioner's storage unit); id. at 93 (describing Petitioner's text message indicating that he did not want others to know he was selling drugs and had a gun).[10] Petitioner's argument that the jury

[10] Petitioner argues that the United States did not provide a "scintilla" of evidence that this case that Petitioner's drug enterprise implicated violence or danger. ECF No. 170-1 at 8. But as noted above, Detective Milewczik testified that guns are "considered pretty much a tool of the trade. It's used not only to protect yourself from robbery but also to protect the assets." ECF No. 147 at 157.

instruction prejudiced his defense on Counts Five and Ten simply fails to account for the evidence presented at trial.

Petitioner has shown neither deficient performance of counsel nor prejudice, and he is not entitled to relief on Ground Two.

**C. Ground Three**

Petitioner next argues that Trial Counsel rendered ineffective assistance for failing to move for suppression of evidence when a witness failed to appear at trial. ECF No. 170 at 7. Petitioner claims that "[a]ll of the evidence used against [Petitioner] at trial was obtained via search warrants issued following two alleged 'controlled buys' made by a confidential informant and cooperating witness." Id. Petitioner thus argues that Trial Counsel "should have moved to suppress all of the evidence obtained via the []related search warrants, or moved for a mistrial." ECF No. 170-1 at 11.

On a Strickland claim premised on counsel's failure to move for suppression of evidence, the court first examines whether the "unfiled motion would have had some substance." United States v. McNeil, 126 F.4th 935, 942 (4th Cir. 2025) (quoting Grueninger v. Dir., Va. Dep't of Corrs., 813 F.3d 517, 525 (4th Cir. 2016)). If the motion would have had substance, the court next examines "whether 'reasonable strategic reasons' nonetheless 'warranted not filing the motion.'" Id. (quoting United States v. Pressley, 990 F.3d 383, 388 (4th Cir. 2021)). Turning to prejudice, the court

assesses if the unfiled motion was "meritorious and likely would have been granted," and then whether there exists a "reasonable probability that granting the motion would have affected the outcome." Id. (quoting Grueninger, 813 F.3d at 525).

Trial Counsel notes that the United States moved to dismiss Counts Two and Three, which would have required proof by the non-appearing confidential informant's testimony. ECF No. 177-1 ¶ 35. With Counts Two and Three dismissed, Trial Counsel submits "that he is unaware of any constitutional doctrine that would have permitted him to make such a motion to suppress on the morning of trial because an informant upon whose work the earlier search warrants relied had failed to appear as a trial witness." Id. ¶ 33. Trial Counsel was not, therefore, "constitutionally obligated to take any further action in light of [the confidential informant]'s failure to appear." Id. ¶ 37.

The Fourth Amendment guards against unreasonable searches and seizures without a search warrant upon probable cause. U.S. Const. amend. IV. In assessing if probable cause exists for a search warrant, the issuing judge or magistrate considers the affidavit of law enforcement to determine if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Absent a valid warrant or an exception to the warrant requirement, "evidence obtained in violation of the Fourth Amendment may be

suppressed under the exclusionary rule." United States v. Banks, 482 F.3d 733, 738 (4th Cir. 2007) (citing United States v. Perez, 393 F.3d 457, 460 (4th Cir. 2004)).

Here, Petitioner does not challenge any specific search warrant, but rather the "search warrants" premised on affidavits asserting the controlled buys from Petitioner as probable cause. ECF No. 170-1 at 10. Petitioner has not alleged a facial error in any search warrant, but in observation of the court's duty to construe pro se petitions liberally, see Lawe, 905 F. Supp. 2d at 746 (citing Beaudett, 775 F.2d at 1274), the court has reviewed the search warrants and supporting affidavits by law enforcement submitted by the United States, see ECF Nos. 177-2, 177-3, 177-4, 177-5. The court finds no facial error therein and that the affidavits readily show probable cause, not only by describing the controlled buys through the confidential informant, but also by describing law enforcement's firsthand investigation and surveillance of Petitioner. See, e.g., ECF Nos. 177-2 at 7-8, 177-3 at 7, 177-4 at 5, 177-5 at 12-14. Moreover, Petitioner has not alleged, and certainly has not made a "substantial preliminary showing" of, any false statement in the search warrants and supporting affidavits. See United States v. Sanders, 107 F.4th 234, 252 (4th Cir. 2024). Nor has he shown that a false statement was made knowingly or recklessly and was necessary for the issuing court to find probable cause. See id.

Petitioner appears to argue, without legal basis, that the confidential informant's failure to appear as a witness at trial somehow invalidated the search warrants. ECF No. 170-1 at 10-11. Absent a "substantial preliminary showing" (or here even an allegation) that the search warrants were invalid or premised on material misrepresentations or omissions by law enforcement, the court cannot conclude that the unfiled motion to suppress "had some substance." McNeil, 126 F.4th at 942 (quoting Grueninger, 813 F.3d at 524-25). It is not enough that a confidential informant referenced in the affidavits did not appear at trial; a search warrant is valid if issued upon probable cause existing at the time of issuance. See, e.g., United States v. Jordan, 485 F. Supp. 3d 664, 672-73 (E.D. Va. 2020) (Payne, J.) (citing United States v. McCall, 740 F.2d 1331, 1335 (4th Cir. 1984)); United States v. Moore, 775 F. Supp. 2d 882, 895-96 (E.D. Va. 2011) (Payne, J.); Jordan v. United States, No. 3:16-cr-145, 2024 WL 871369, at *7-8 (W.D.N.C. Feb. 29, 2024). Moreover, to the extent Petitioner could not cross-examine the confidential informant at trial, ECF No. 170-1 at 11, the court notes that Petitioner did cross-examine affiant Detective Gosnell, who "cultivated" the confidential informant and oversaw law enforcement's communications with Petitioner via the informant to stage the controlled buys, see ECF Nos. 146 at 76, 177-2 at 6. Accordingly, the court lacks a basis to find that the unfiled motion to suppress would have "had some

substance," and Petitioner therefore has failed to show that Trial Counsel's performance was deficient. McNeil, 126 F.4th at 942-43. On this basis, the court does not proceed to the remaining considerations under the "refined" Strickland analysis for failure to file a suppression motion, and Petitioner is not entitled to relief on Ground Three. See Pressley, 990 F.3d at 388.

**D. Ground Four**

Petitioner's fourth Strickland claim is that Trial Counsel was ineffective for failing to obtain and investigate police body camera footage from the traffic stop and from the search of the unit at AAAA Storage. ECF Nos. 170 at 8, 170-1 at 11-12. Petitioner also argues that Trial Counsel was ineffective for failing to investigate the handling of evidence used against Petitioner at trial. ECF No. 170-1 at 11-12. Petitioner claims "[t]here is no telling what a proper investigation could have uncovered, and how any potential improprieties could have impacted this case." Id. at 12.

The legal standard for failure-to-investigate comes directly from Strickland:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any

> ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91. Here, Trial Counsel states that he "cannot independently confirm or recall the receipt or not of actual body wor[n] camera footage nor whether he reviewed any or not, but can say that he and his office certainly reviewed whatever discovery was presented and adequately prepared for trial." ECF No. 177-1 ¶ 46.

As a preliminary matter, the court has reviewed the trial transcript in full and determined that the record readily establishes that Trial Counsel conducted more than an adequate investigation to inform his reasonable judgment, at least as his investigation concerned evidence offered by the United States. See Strickland, 466 U.S. at 690-91. Trial Counsel's cross-examination of the United States' witnesses showed adequate preparation and familiarity with the United States' evidence. See, e.g., ECF No. 147 at 151-52 (noting that the odometer in Petitioner's rental vehicle did not register mileage consistent with a trip from Norfolk to Baltimore). Trial Counsel also impeached witness testimony where the evidence was lacking, as with Officer Mills' deleted body camera footage and with law enforcement's failure to follow Petitioner from the Norfolk International Airport to Baltimore. ECF No. 146 at 30-31, 78-80. In its totality, the trial

record supports Trial Counsel's representation that he "certainly reviewed whatever discovery was presented and adequately prepared for trial." ECF No. 177-1 ¶ 46.

In any event, Petitioner has failed to allege how Trial Counsel failed to investigate "the handling of evidence," and the court encounters no basis to find Trial Counsel's performance deficient in this regard.[11] Moreover, "gaps in the chain of custody normally go to the weight of the evidence rather than its admissibility." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009) (citation modified). On a failure-to-investigate claim, a Strickland claimant must show "what an adequate investigation would have revealed." Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990). Petitioner does not allege how a proper investigation into the chain of custody would have diminished the

---

[11] Petitioner himself stipulated and signed that much of the evidence at trial was kept secure and admissible without requiring testimony of a custodian of record. Such stipulated evidence included narcotics exhibits, ECF No. 90 (Stipulation #2); an ATF form for Petitioner's purchase of a firearm recovered during the investigation, ECF No. 93 (Stipulation #4); cell phone location data, ECF No. 95 (Stipulation #6); and data downloaded from Petitioner's cell phones, ECF No. 96 (Stipulation #7). Petitioner also stipulated and signed that chemical narcotics analyses offered as evidence "utilized proper scientific methods to analyze the narcotics exhibits in this case and properly recorded the results of their analysis." ECF No. 89 (Stipulation # 1). The court declines to find Trial Counsel's performance deficient for failing to investigate the "handling" of this evidence when Petitioner himself signed stipulations that the evidence was admissible without testimony concerning chain of custody and evidence preparation.

weight of evidence supporting his convictions, and the court lacks a basis to conclude that Trial Counsel's failure to investigate prejudiced the defense.

As to Trial Counsel's alleged failure to investigate police body camera footage, the court notes at a threshold level that K-9 Detective Rombs was not wearing a body camera, see ECF No. 146 at 42-43, and Trial Counsel cannot be defective for failing to investigate nonexistent evidence, see Boseman v. Bazzle, 364 F. App'x 796, 809 (4th Cir. 2010). As to the other officers involved in Petitioner's investigation and arrest, even if Trial Counsel unreasonably failed to investigate body camera footage,[12] Petitioner is not entitled to relief because he has not shown, or here even alleged, prejudice. See United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) ("A defendant asserting an [ineffective assistance of counsel] claim must . . . satisfy both prongs, and a failure of proof on either prong ends the matter.").

[12] Petitioner concedes, and the United States agrees, that arresting Officer Mills' body camera footage was deleted and unavailable to Trial Counsel. ECF Nos. 170-1 at 12, 177 at 20; see ECF No. 146 at 23-24. Trial Counsel impeached Officer Mills' testimony by questioning him on cross-examination about how the body camera footage was deleted, whether it should have been stored as evidence, and whether Officer Mills even turned on his body camera during Petitioner's arrest. ECF No. 146 at 29-31. This tends to indicate that Trial Counsel did investigate police body camera footage. Petitioner maintains, however, that a proper investigation would have made Officer Mill's body camera footage available at trial. ECF No. 170-1 at 12.

It is not enough that Petitioner states there is "no telling what a proper investigation could have uncovered." ECF No. 170-1 at 12. Nor is it enough that the footage "could have uncovered otherwise unknown defenses." Id. at 14. Petitioner must instead show "what an adequate investigation would have revealed." Bassette, 915 F.2d at 940-41; accord Satcher, 126 F.3d at 572 (quoting Murray, 477 U.S. at 494). Petitioner does not allege what the body camera footage would have shown, how the body camera footage would have been exculpatory, or how it would have otherwise had any bearing whatsoever on his defense. Moreover, the court agrees with the United States that Petitioner's convictions in this matter are supported by substantial photographic evidence from the traffic stop, the search of 3800 Halyard Court Apartment 103, and the search of Petitioner's storage unit at AAAA Storage. See ECF No. 177 at 20. Petitioner has not alleged how, if at all, the body camera footage would have shown anything different than this photographic evidence, and he is not entitled to relief on Ground Four. See United States v. Perry, 92 F.4th 500, 513-14 (4th Cir. 2024).

**E. Ground Five**

Finally, Petitioner argues that Trial Counsel rendered ineffective assistance because he failed to "properly review the

discovery with Petitioner." ECF Nos. 170 at 13, 170-1 at 13-14.[13] Petitioner claims that Trial Counsel "only met with Petitioner to review the discovery one time," despite Petitioner's efforts to meet with Trial Counsel. ECF No. 170-1 at 13. Petitioner claims that his proper review of the evidence with Trial Counsel "may have given rise to challenges or defenses that were ultimately not employed," or that he possibly would have accepted a plea offer. Id.

Trial Counsel states that Petitioner's claim "is neither accurate nor true," as he had "numerous contacts with the [Petitioner], both by telephone and in person in furtherance of preparing this case." ECF No. 177-1 ¶¶ 48, 49. These contacts included an in-person meeting with Petitioner to review audio evidence and "a comprehensive presentation of evidence by the prosecution team as a part of pretrial preparation and assessment of evidence." Id. ¶¶ 50, 52.

The court need not resolve this factual dispute, for even accepting Petitioner's version of events he has not made the

[13] Petitioner also asserts in Ground Five that Trial Counsel "failed to obtain all exculpatory evidence." ECF Nos. 170 at 13, 170-1 at 13-14. The only potentially exculpatory evidence he claims Trial Counsel failed to investigate is police body camera footage, which the court has already addressed in this Opinion and Order. See supra Section V.D. Accordingly, Petitioner is not entitled to relief on the grounds that Trial Counsel allegedly "failed to obtain all exculpatory evidence."

requisite showing of an entitlement to relief.[14] As an initial matter, "there is no established 'minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.'" Moody v. Polk, 408 F.3d 141, 148 (4th Cir. 2005) (quoting United States v. Olson, 846 F.2d 1103, 1108 (7th Cir. 1988)); accord Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984) ("[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel.").

Moreover, Petitioner has provided no suggestion of prejudice flowing from the error, the same as above in Ground Four regarding the allegations as to body camera footage (which Petitioner reiterates in Ground Five). Petitioner avers only that "[p]roper review of the discovery may have given rise to challenges or defenses that were ultimately not employed," or "have caused Petitioner to accept the plea offer" from the United States. ECF 170-1 at 13. Petitioner's claim that he "do[esn't] know" what would have happened had additional meetings with counsel been held, id., fails to display how any alleged error "worked to his 'actual and substantial disadvantage,'" instead suggesting "merely that the error created a 'possibility of prejudice,'" Satcher, 126 F.3d

[14] It is difficult, however, to reconcile Petitioner's claim to have "only dimly understood the evidence" with the signed stipulations of fact concerning evidentiary matters that were read and entered at trial. ECF No. 170-1 at 13; see supra note 11.

at 572 (quoting Murray, 477 U.S. at 494). Such argument, like that above as to Ground Four, falls short of showing prejudice in this case. A bare assertion that "what could have resulted from proper review of the discovery and evidence would have been better for Petitioner," ECF 170-1 at 13, is insufficient to evince prejudice or "undermine confidence in the outcome" of the trial, United States v. Sutherland, 103 F.4th 200, 208 (4th Cir. 2024) (quoting Strickland, 466 U.S. at 694). As such, Petitioner is not entitled to relief on Ground Five.

## VI. CONCLUSION

For the reasons set forth in this Opinion and Final Order, Petitioner has not shown a colorable claim of ineffective assistance of counsel entitling him to relief. Accordingly, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. 170, is **DENIED**.

Petitioner is **ADVISED** that he may appeal from this Dismissal Order by filing, within sixty (60) days of the entry of this Dismissal Order, a written notice of appeal with the Clerk of the United States District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Finally, having failed to make a substantial showing of denial of a constitutional right, and for the reasons stated herein, the court **DECLINES** to issue a certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

The Clerk is **DIRECTED** to electronically forward a copy of this Opinion and Final Order to the United States Attorney at Norfolk, Virginia, and to Andrew M. Sacks, Trial Counsel. The Clerk is further **DIRECTED** to mail a copy of this Order to Petitioner at FCI Petersburg Low, Satellite Camp, P.O. Box 1000, Petersburg, Virginia 23804. See ECF No. 180 (Notice of Address Change).

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

September 28, 2026